IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ANDRE LAMONTE EDMONDS,

    Plaintiff,

v.                                                              Civil Action No. **3:14CV30**

**OFFICER BOSWELL**, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Andre Lamonte Edmonds, a former Virginia detainee proceeding *pro se*, filed this 42 U.S.C. § 1983[1] action in which he alleges Defendants[2] violated his rights under the Eighth Amendment.[3] Edmonds alleges that during his detention in the Hampton City Jail, the Defendants subjected him to excessive force. The matter is before the Court on Defendants' Second Motion for Summary Judgment.[4] Defendants provided *Roseboro* notice, however

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The named Defendants are three officers with the Hampton Police Department: Officer Boswell, a Deputy Sheriff; Officer Luther, a Deputy Sheriff; and Officer Barlow, a Sergeant.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] By Memorandum Order entered on May 28, 2015, the Court denied without prejudice the initial Motion for Summary Judgment because Defendants inadvertently failed to submit the evidence supporting the motion. (*See* ECF No. 22.)

Edmonds has not filed a response. For the reasons that follow, the Second Motion for Summary Judgment will be GRANTED.

## I. SUMMARY OF RELEVANT ALLEGATIONS

Edmonds alleges that on November 8, 2013, while he was detained in the Hampton City Jail for being drunk in public, he became verbally combative with Deputy Boswell. Edmonds claims that Deputy Boswell entered into his cell and "charge[d]" him, another officer used a taser on Edmonds three times, and Deputy Luther restrained him, while Deputy Boswell continuously punched him. (Compl. 4–5.)[5] As a result of this incident, Edmonds alleges that he has been "treated for extreme head aches and back pain, severe pain to his right shoulder . . . , and permanent skin abrasions to [his] back." (*Id.* at 5.) He also contends that, as a result of the altercation, he has been charged with "felony on an officer" and transferred to a higher security facility. (*Id.*) Edmonds seeks monetary damages, injunctive relief, and to have "each defendant charged criminally." (*Id.* at 6.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

---

[5] The Court corrects the capitalization in quotations from Edmonds's Complaint.

marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit if Deputy C. Boswell (Br. Supp. Mot. Summ. J. Ex. 1, ECF No. 24–1 ("Boswell Aff.")); (2) an affidavit of Master Deputy Luther Stokes (*id.* Ex. 2, ECF No. 24–2 ("Stokes Aff.")); (3) an affidavit of Sergeant D. Barlow (*id.* Ex. 3, ECF No. 24–3 ("Barlow Aff.")); (4) a Hampton Sheriff's Office Use of Force Report (*id.* Ex. 4, ECF No. 24–4 ("Use of Force Report")); (5) a Hampton Sheriff's Office Incident Report filed by Sergeant Barlow (*id.* Ex. 5, ECF No. 24–5 ("Barlow Incident Report")) and a Hampton Sheriff's Office Incident Report filed by Deputy

3

Boswell (*id.* Ex.6, ECF No. 24–6 ("Boswell Incident Report")); and (6) records from Edmonds's arrest and subsequent conviction for assault and battery on a correctional officer (*id.* Ex. 7, ECF No. 24–7)).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Edmonds failed to respond to the Second Motion for Summary Judgment and failed to swear to the contents of his Complaint. Accordingly, Edmonds has submitted no evidence in support of his allegations. In light of the foregoing submissions and principles, the following facts are established for the purposes of the motion for summary judgment.

### III. SUMMARY OF UNDISPUTED FACTS

On Friday, November 8, 2013, at approximately 1:30 a.m., Edmonds was processed in intake for being drunk in public at the Hampton City Jail. (Boswell Aff. ¶ 2.) While in his cell, "Edmonds constantly yelled and cursed at the jail staff disrupting the other detainees." (*Id.* ¶ 3.) At 6:10 a.m., when Deputy Boswell was handing out breakfast trays, Edmonds became disorderly and began to rattle the bars of his cell, yell obscenities, and threatened to flood his cell. (*Id.* ¶ 4.) Deputy Boswell decided to move Edmonds to cell ten because cell ten had an accessible water shutoff valve. (*Id.* ¶ 5.) As Deputy Boswell opened the cell where Edmonds was housed, Edmonds "got into [his] face at which time [Deputy Boswell] delivered a palm strike to create separation." (*Id.* ¶ 6.) Deputy Boswell attempted to secure the cell and get assistance, but as he closed the cell door, Edmonds spit in his face. (*Id.*) Deputy Boswell "went to apply a 3 point grasp," however, "Edmonds resisted and [they] both fell to the floor with Edmonds on top of [him]." (*Id.*) Deputy Kearney Rawles responded, called for Sergeant Barlow, repeatedly ordered Edmonds to stop fighting and attempted to restrain Edmonds. (*Id.*)

4

Sergeant Barlow observed Edmonds on top of Deputy Boswell, pinning him to the floor. (Barlow Aff. ¶ 3.) Sergeant Barlow observed that Edmonds continued to resist and he attempted to call medical to advise of the need to use the taser. (*Id.* ¶ 4.)

Sergeant Barlow repeatedly warned Edmonds to cease resisting or else he would use the taser. (Boswell Aff. ¶ 7; Barlow Aff. ¶ 5.) Edmonds continued to be combative, striking at Deputy Boswell and Deputy Rawles, failed to comply with the orders to stop fighting, and created a dangerous situation for jail staff. (Barlow Aff. ¶ 6.) Sergeant Barlow fired the taser, but it missed Edmonds. (Boswell Aff. ¶ 9; Use of Force Report 2.) Sergeant Barlow deployed the taser a second time and it made contact with Edmonds's back; however, the taser appeared to have no effect on Edmonds, and Edmonds continued to resist. (Boswell Aff. ¶ 9; Barlow Aff. ¶ 7; Use of Force Report 2.) Sergeant Barlow deployed the taser a third time and Edmonds finally ceased to resist and was handcuffed. (Boswell Aff. ¶ 9; Barlow Aff. ¶¶ 7–8.) Medical staff then examined and treated Edmonds. (Boswell Aff. ¶ 9; Barlow Aff. ¶ 9.)

Edmonds was charged with felony assault on a law enforcement officer, and was ultimately convicted of a misdemeanor count. (Barlow Aff. ¶ 10; *see* ECF No. 24–7.) Pursuant to standard procedures Sergeant Barlow filed a Use of Force Report and both Deputy Boswell and Sergeant Barlow filed Incident Reports. (Barlow Aff. ¶¶ 11–12; *see* Use of Force Report, Boswell Incident Report, Barlow Incident Report.)

## IV. FOURTEENTH AMENDMENT

### A. Lack of Personal Participation by Defendant Stokes

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v.*

5

*Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "[t]he doctrine of *respondeat superior* has no application" under § 1983. *Id.* (citing *Vinnedge*, 550 F.2d at 928). Edmonds must demonstrate that each defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.*

First, in the Brief in Support of Motion for Summary Judgment, Defendants explain that "Officer Luther" may be Deputy Luther Stokes. (Br. Supp. Mot. Summ. J. 4, ECF No. 24.) Deputy Luther Stokes avers that at the time of the incident he was not present or assigned to work at the jail, but was working as a court bailiff. (Stokes Aff. ¶¶ 1-2.) Thus, Edmonds fails to demonstrate that Deputy Stokes was personally involved in the deprivation of his rights because the uncontroverted evidence demonstrates that Deputy Stokes was not present at the jail. Accordingly, any claim against Deputy Stokes will be DISMISSED.

**B.     Excessive Force**

Allegations of excessive force against a pretrial detainee must be evaluated under the Due Process Clause of the Fourteenth Amendment.[6] *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013) (citation omitted). Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). A detainee may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473–74 (2015) (citations

---

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

omitted).[7] Factors a court may consider to determine whether force was objectively unreasonable may include

> the relationship between the need for the use of force and the amount of force used; the extent of [the detainee's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Because "officers facing disturbances 'are often forced to make split-second judgments' . . . "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* at 2474 (citing *Graham*, 490 U.S. at 397).

Here, as explained below, the force applied by Deputy Boswell and Sergeant Barlow was reasonable, in light of Edmonds's active resistance, his refusal to follow the officers' commands, his continuing combative behavior, and the safety risk to the officers involved. *Cf. Grayson v. Peed*, 195 F.3d 692, 694–97 (4th Cir. 1999) (finding no excessive force where inmate acted belligerently, stuck his arm through his door posing a danger to officers, jammed his foot in the doorway of his cell when officers attempted to close it, necessitating a five-man cell extraction team to subdue him resulting in detainee being punched many times).

### 1. The Hand Strike

Edmonds yelled obscenities and threatened to flood his cell so Deputy Boswell decided to move him. Instead of allowing Deputy Boswell to handcuff him, Edmonds "got into [Deputy Boswell's] face," and Deputy Boswell was forced to use a hand strike to push Edmonds away. (Boswell Aff. ¶ 6.) Certainly, Deputy Boswell's use of a hand strike to push Edmonds away was

---

[7] In *Kingsley*, the Supreme Court determined that the appropriate standard for a Fourteenth Amendment standard is "only that the officers' use of that force was *objectively* unreasonable" not that "the officers were *subjectively* aware that their use of force was unreasonable . . . ." 135 S. Ct. at 2470.

objectively reasonable considering the factors set forth in *Kingsley*. *See* 135 S. Ct. at 2473. Edmonds had been unruly and was now unrestrained; thus, Edmonds was a moderate security threat to Deputy Boswell. Edmonds refused to allow Deputy Boswell to apply handcuffs and began to actively resist Deputy Boswell. Deputy Boswell needed to create space between himself and Edmonds in order to attempt to restrain Edmonds. Deputy Boswell applied minimal force in an attempt to create separation and restore order. Edmonds puts forth no evidence that he sustained an injury from the hand strike. Edmonds simply fails to demonstrate that Deputy Boswell's use of a hand strike constitutes an excessive use of force.

### 2. The Struggle with Multiple Officers and Use of the Taser

Edmonds's combative behavior quickly escalated. As Deputy Boswell attempted to close the cell door, Edmonds spit on Deputy Boswell. Deputy Boswell then attempted to use a three-point restraint on Edmonds, and Edmonds began resisting Deputy Boswell. The two men fell to the floor and Edmonds had Deputy Boswell pinned to the ground. Deputies Rawls and Boswell, as well as Sergeant Barlow, ordered Edmonds to stop being combative, but Edmonds was noncompliant. At that point, Edmonds became a severe security problem and a threat to the safety of the three officers and others in the jail. Sergeant Barlow deployed the taser three times: the first time missed Edmonds; the second fire hit Edmonds's shoulder, but had no apparent impact on Edmonds; the third fire finally stopped Edmonds from being combative. Weighing the factors set forth in *Kingsley*, Edmonds's fails to establish that Sergeant Barlow's use of the taser was objectively unreasonable.

Edmonds actively resisted any effort by the officers to restrain him. Instead, Edmonds physically attacked Deputy Boswell, the two men were on the ground, and Edmonds refused to follow the commands of three officers to stop fighting. Sergeant Barlow reasonably perceived a

8

severe security threat to the officers involved and others in the jail. Edmonds had repeatedly refused to respond to verbal commands or attempts to physically restrain him. Edmonds fails to demonstrate that, in light of his continued resistance and combative behavior, his refusal to obey officers' commands to stop fighting, and in light of the palpable safety threat to the officers involved, Sergeant Barlow's actions were unreasonable. *Cf. Husnik v. Engles*, 495 F. App'x 719, 721–22 (7th Cir. 2012) (concluding that officers' use of taser was reasonable where detainee refused to comply with commands to stop belligerent and aggressive behavior); *Draper v. Reynolds*, 369 F.3d 1270, 1277–78 (11th Cir. 2004) (finding use of taser on arrestee who refused to comply with verbal commands and resisted arrest did not constitute excessive force). Edmonds also fails to adduce any evidence that he sustained injury from Sergeant Barlow's use of the taser. Edmonds fails to demonstrate that Deputy Boswell and Sergeant Barlow used excessive force while restraining him. Thus, Deputy Boswell's and Sergeant Barlow's actions did not violate the Due Process Clause of the Fourteenth Amendment.[8]

## V. CONCLUSION

Accordingly, Defendants' Second Motion for Summary Judgment (ECF No. 23) will be GRANTED. Edmonds's claim will be DISMISSED. The action will be DISMISSED WITH PREJUDICE.

An appropriate Final Order shall issue.

Date: 10-28-15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge

---

[8] Edmonds alleges that Sergeant Barlow used the taser on him, "Deputy Boswell then punched me repeatedly to the back of my head as I was being held . . . ." (Compl. 4 (capitalization corrected).) Edmonds, however, puts forth no evidence that Deputy Boswell repeatedly struck Edmonds while he was restrained.

9